(14 Misc. Rep. 151.)

### SEYMOUR v. MUTUAL RESERVE FUND LIFE ASS'N.

(Supreme Court, Special Term, New York County.    October, 1895.)

1. CO-OPERATIVE INSURANCE ASSOCIATION—CONTRACT WITH MEMBER.
    A certificate of membership in a co-operative life insurance association, prescribing the amount in which the members may be assessed on notice, must be read in connection with the constitutional provision authorizing its board of directors to fix and determine rates of assessment.

2. SAME—INJUNCTION AGAINST.
    Laws 1892, c. 690, § 56, providing that no order enjoining a domestic insurance corporation shall be granted otherwise than on the application of the attorney general, "except in an action by a judgment creditor, or in proceedings supplementary to execution," prohibits an injunction against a co-operative insurance corporation, on the application of a member, to enjoin it from enforcing certain assessments against him.

3. PRELIMINARY INJUNCTION—WHEN DENIED.
    A preliminary injunction will not be granted where it would immediately afford to plaintiff substantially the relief for which he prays judgment.

Action by Isaac L. Seymour against the Mutual Reserve Fund Life Association to enjoin defendant from enforcing certain calls or assessments against plaintiff, on the ground that the certificate of membership constituted the contract between himself and defendant, limiting the amount of calls. Plaintiff moves for a temporary injunction. Denied.

William Phlippeau and Max Myers, for plaintiff.
George Burnham, Jr., and William D. Guthrie, for defendant.

BEEKMAN, J.   The defendant is a life insurance corporation, upon the co-operative or assessment plan, duly incorporated under the laws of this state. The plaintiff is a member of said corporation, claiming the benefits of an insurance to the extent of $10,000. He holds what is known as a "certificate of membership," issued on the 10th day of October, 1881, in which it is stated that in consideration of the statements and representations contained in his application, and of the sum of $30 paid by him to the defendant, and of the annual payment of $20, and also of $28, being the amount of assessment payable 30 days from the date of each notice, the defendant thereby receives Isaac L. Seymour, the plaintiff, as a member of the association, and the defendant thereby further promises and agrees, in the event of the decease of said member, to make an assessment upon the entire membership for such a sum as has been established by the board of trustees at the date of entry; that is, the date upon which the plaintiff became a member of the association. From the sum received from such assessment the defendant agrees to set aside as a reserve fund 25 cents, and that the balance shall be paid at the office of the association in the city of New York to the wife of the plaintiff, or to his legal representatives, within 60 days after the receipt of satisfactory evidence to the defendant of plaintiff's death during the continuance of his certificate of membership; the sum so paid, however, not to exceed $10,000. Various other provisions are contained in the certificate, in regard to the maintenance of a reserve

fund and death fund, not material to the disposition of this motion. The certificate states that it is issued and accepted by the member subject to certain conditions and agreements therein specified, all of which in some form affect the conduct of the plaintiff in regard to the risk assumed. It is also provided that:

"No alteration of the terms of this contract shall be valid, and no forfeiture thereunder shall be waived, unless such alterations or waiver shall be in writing, and signed by the president or secretary of the association. No agent of the association has authority to make, alter, or discharge contracts, waive forfeitures, extend credits, grant permits, or name an extra rate for special risks."

The plaintiff continued to pay the assessments prescribed by the certificate, at the rate of $28 upon each mortuary call, until 1885, when the amount was raised to $56, which the plaintiff paid. Again, from December 22, 1885, to February 28, 1889, with two exceptions, the mortuary calls or assessments upon the plaintiff amounted to the sum of $42 each, all of which were paid by him. Between April 29, 1889, and June, 1895, each mortuary call or assessment was raised to the sum of $53.10, which was also paid by the plaintiff. All of these calls, although in some instances greatly in excess of the amount apparently fixed by the certificate of membership, were paid by the plaintiff without protest or objection. In August, 1895, a further mortuary call or assessment was imposed upon the plaintiff, requiring him to pay the sum of $112.80, and at the same time he was advised that further calls or assessments, payable in November, 1895, and January, 1896, would be at least of the same amount. To this plaintiff has objected, and brings this action, in which, among other things, he seeks injunctive relief, prohibiting the defendant from enforcing said calls or assessments, on the ground that the certificate of membership constitutes a contract between himself and the defendant, by the terms of which no mortuary call can exceed the sum of $28. The defendant contends that the certificate of membership, standing by itself, does not completely measure the rights and duties of the parties, but is to be read in connection with the constitution of the defendant corporation, which was framed by its members, and in the adoption of which the plaintiff, therefore, had a voice.

This states with sufficient accuracy the question upon which the plaintiff's right to the injunctive relief for which he asks depends. By the terms of the constitution of the defendant, the board of directors is authorized to fix and determine rates of assessment, admission fees, and annual dues, and to adopt such other rules and regulations as they may deem best for the interests of the association. The increase of assessment complained of is the result of a change of policy on the part of the defendant, pursuant to a request or suggestion on the part of the superintendent of the insurance department, which was put on the ground that it was inequitable that the assessment should be based upon the age of the member at the time he entered the association, and that the safer and more equitable rule would be to predicate the amount of each assessment upon the age of the member at the time the call is made. The change of plan

is made with the warm approval of the insurance department of this state, and of similar departments in other states where the defendant transacts its business, so that no question can arise as to the reasonableness of the action of the defendant. As has been already said, this whole question is, what was the contract between the parties? It was said by Judge Peckham in the case of In re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 114, that co-operative or assessment companies are "neither stock nor exactly mutual insurance companies. While partaking of the general features of a mutual company, they could not be exactly described as such in all respects." And he expresses the view that "the liability of the company and the rights of its members must be measured and construed by the constitution and by-laws of the company and the certificates which it issues." It cannot, therefore, be said that the contention of the plaintiff is at all clear, or that it is free from reasonable doubt. Indeed, his own conduct for years in assenting to the changes in the amount of the calls suggests a practical construction by both parties of their mutual rights and obligations more in harmony with the claim of the defendant corporation than that which the plaintiff now advances. However this may be, it is sufficient to say that the rule is well recognized that the right of the plaintiff should be quite clear to justify a preliminary injunction, and that the case which he has made on this motion is not of such a character. In view of the fact that in actions where the object of the suit is to obtain injunctive relief the granting of a preliminary injunction in effect decides the cause in advance of its trial, it is therefore a wise rule which admonishes the court to proceed in such cases with great caution. I have already, in a somewhat similar case, refused to grant similar relief, and reiterate what I said upon this subject on that occasion. Greanelle v. Association (special term, at chambers) 35 N. Y. Supp. 796.

But there is another ground or aspect of the case on which it is claimed that no injunction should issue. Section 56 of chapter 690, Laws 1892, provides as follows:

"No order, judgment or decree providing for an accounting, or enjoining, restraining or interfering with the prosecution of the business of any domestic insurance corporation, or appointing a temporary or permanent receiver thereof, shall be made or granted otherwise than upon the application of the attorney-general on his own motion, or after his approval of a request in writing therefor of the superintendent of insurance, except in an action by a judgment creditor, or in proceedings supplementary to execution."

The injunction asked for, if granted, would involve an adjudication which in effect would compel the defendant to abandon a fundamental principle, upon which it now conducts its enormous business. The company could not discriminate in favor of the plaintiff against his fellow members similarly situated; and, further, it may not be doubted that, if an injunction should be issued in this case, a large number of the other members of the corporation would apply for and be entitled to have similar restraining orders, which would result in a most serious interference with its entire business. The contention, therefore, of the counsel for the defendant, that this case comes within the statutory prohibition above referred to, has great force, and is

of sufficient weight in itself to justify the court in refusing to grant a preliminary injunction.

Upon the whole case, therefore, I am quite satisfied that it would be improper for me to grant this motion. It should be left to the court, on the trial of the action, to determine the right of the plaintiff to injunctive relief. In the meantime he may continue to pay the assessments of which he complains under protest, and, if it should be decided that he has been the victim of an unlawful exaction, he is not without his remedy. The balance of inconvenience inclines immeasurably towards the defendant, in weighing the immediate effect of granting or denying the plaintiff's motion, and this is a circumstance which deservedly has great weight with the court in exercising its discretion upon such applications. The case is not one, at least, in which irreparable injury will result to the plaintiff from a refusal to grant the injunction asked for; nor is the situation such that, if the defendant is not in the meantime restrained, a judgment for the plaintiff would be but a barren victory. It results from what I have said that the motion for an injunction pendente lite should be denied.

Motion denied, with $10 costs, to abide the event.